{¶ 16} I disagree. The divorce decree's grant of visitation at appellant's former wife's discretion not only permitted contact between Price and his son, Justin, but also necessitated communication between Price and his former wife. For four years, appellant was visiting his child and contacting his former wife, all ostensibly in direct contravention of the CPO. If this is true, then the language of the latter divorce decree permitting visitation is a complete nullity since appellant was to have "no contact" with Justin or his former wife due to the unmodified language in line 6 of the CPO.
 {¶ 17} As a result of clearly conflicting orders issued by the Domestic Relations Court, Price's legal rights and duties were not clearly defined. Price's ability to communicate with his former wife in order to visit with his son was left to her every whim. In fact, she acknowledged on cross-examination the inconsistency between the orders as evidenced by this exchange.
 {¶ 18} "Q. So the protection order as you understood it said that your ex-husband could not visit with your son, correct?
 {¶ 19} "A. Yes, ma'am.
 {¶ 20} "Q. And yet you were allowing his visitation; is that correct also?
 {¶ 21} "A. Yes, ma'am.
 {¶ 22} "Q. You called the police because Jeff left these messages saying that he loves his son; is that right?
 {¶ 23} "A. Yes, ma'am.
 {¶ 24} "Q. And did you also think the protection order was in your discretion?
 {¶ 25} "A. Yes, ma'am.
 {¶ 26} "Q. So you thought that if you wanted to use the protection order one day, then you could call the police, but if you wanted to have him visit, then that would be okay, too?
 {¶ 27} "A. Yes, ma'am."
 {¶ 28} I recognize that the CPO was initially issued for the protection of Price's son and his former wife, however, I am unable to find that sentiments of love, an Easter basket and a hope to see a child on his birthday constitute a violation of the CPO issued in 2000. The clear language of the CPO states Price "shall not abuse a family or household member by harming, attempting to harm, threatening, molesting, following, stalking, bothering, harassing, annoying, contacting or forcing sexual relations upon them." The contact admitted here can hardly be deemed abuse or harassment. In fact, Price's former wife acknowledged on cross that the calls were not harassing in this exchange:
 {¶ 29} "Q. And there's nothing harassing about the phone calls; is that right?
 {¶ 30} "A. Yes, ma'am."
 {¶ 31} I am convinced after reviewing the record that a serious injustice would occur in affirming this felony conviction based upon a review of all the facts and circumstances before us. Not only do the contacts herein fall far short of harassment and abuse, but equity weighs heavily in Price's favor as well. Aristotle defined equity as "a better source of justice, which corrects legal justice where the latter errs through being expressed in a universal form and not taking account of particular cases." Ethics, book 5, c. 10. I would reverse.